1
2
3
4
5
6
7
8
9                 UNITED STATES DISTRICT COURT

10               EASTERN DISTRICT OF CALIFORNIA

11

12

13 | EDWARD J. JOHANNECK, | CASE NO. 1:18-cv-00051-LJO-MJS (PC) |

14 |          Plaintiff, | **ORDER REQUIRING PLAINTIFF TO EITHER FILE A FIRST AMENDED** |

15 | | **COMPLAINT OR NOTIFY COURT OF WILLINGNESS TO PROCEED ON** |

16 |      v. | **CLAIMS FOUND COGNIZABLE** |

17 | PAM AHLIN, et al., | (ECF No. 1) |

18 |          Defendants. | **THIRTY (30) DAY DEADLINE** |

19

20

21       Plaintiff is a civil detainee proceeding pro se and in forma pauperis in this civil

22 rights action brought pursuant to 42 U.S.C. § 1983.

23       Plaintiff's complaint (ECF No.1) is before the Court for screening.

24 **I.     Screening Requirement**

25       The Court is required to screen complaints brought by incarcerated persons

26 seeking relief against a governmental entity or officer or employee of a governmental

27 entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the

28

prisoner has raised claims that are legally "frivolous, malicious," or that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## II.    Pleading Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiffs must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Iqbal, 556 U.S. at 677-78.

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). To state a claim under §1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

Under section 1983 the Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir.

2

2002). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), but nevertheless, the mere possibility of misconduct falls short of meeting the plausibility standard, Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## III.    Facts and Allegations

### A. Plaintiff's Claims

Plaintiff is currently detained at Coalinga State Hospital ("Coalinga") and complains of acts that occurred there. He names as Defendants (1) Pam Ahlin, Director of California Department of State Hospitals ("DSH"), and (2) Brandon Price, Director of Coalinga.

Plaintiff's allegations can be fairly summarized as follows:

Plaintiff has been detained at Coalinga for twelve years under California's Sexually Violent Predator Act ("SVPA").

In 2006, after extensive testing to ensure the internet could not be accessed, Defendants approved patient ownership and use at state hospitals of laptop computers and other electronic devices that did not have Wi-Fi capabilities.

In 2007, Defendants issued a moratorium prohibiting patients from purchasing laptops, Palm Pilots, and PlayStations because of violations of hospital policies and violations of state and federal laws regarding child pornography.

In October 2009, DSH implemented Cal. Code Regs. tit. 9, § 4350 (hereinafter Regulation 4350) prohibiting devices that could send or receive information and devices that could be modified to send or receive information, giving Defendants the right to seize any such electronic device. On October 4, 2010, Coalinga notified Plaintiff that his

banned electronic devices could be picked up and stored or mailed to his home.

On December 23, 2017, DSH provided Plaintiff a copy detailing emergency amendments to Regulation 4350 prohibiting nearly all electronic devices with memory storage, devices capable of connecting to the internet or to other devices, and devices capable of copying or recording information.

Plaintiff uses electronic devices to store music, movies, personal items, and legal materials. Since 2014 Coalinga has allowed patients to scan paperwork and store the copies electronically on their personal hard drives. Plaintiff has scanned thousands of irreplaceable legal documents, family photographs, and other personal items. (Most paper documents had been destroyed to comply with Coalinga limits on volumes of paperwork. Almost all of Plaintiff's information exists on hard drives only.)

Plaintiff has invested thousands of dollars on approved electronics and data storage devices. Plaintiff should not to mail his legally purchased movies and electronic devices home as contraband.

Plaintiff does not have the money to continue buying devices only to have them taken away. Plaintiff works as a janitor at Coalinga for $52.50 per month. It takes Plaintiff more than six months to save enough to purchase an X-box or tablet. Plaintiff has no family members to buy these items for him.

Many of these regulations are punitive because many of these devices, such as pre-internet gaming devices, commercial CDs and DVDs, and media recorders which record television shows, pose no security threats.

DSH allowed patients, including those who do not have the means to buy original movies, to purchase blank DVDs and devices to write on DVDs and now wants to take them away.

The regulation will make the hospital more dangerous because patients will have nothing to entertain themselves.

4

Regulation 4350 falls under Title 9. California Code of Regulations, Title 9 should not apply to civilly committed individuals. Title 9 is a California Department of Corrections and Rehabilitation ("CDCR") regulation designed for penal commitments. It is punitive when applied to civil detainees. Plaintiff, a civil detainee, now has no greater rights in these devices than convicted prisoners serving a punitive term of commitment at DSH. Title 22 applies to civilly committed individuals.

Plaintiff is being subjected to worse punishment than if he were serving a penal commitment. CDCR allows some prisoners serving punitive sentences to own electronic devices and have access to the internet. The devices are Wi-Fi capable, but have had the Wi-Fi components removed. At least some state prisoners, therefore, have access to electronic devices and internet services that are being denied to Plaintiff.

Plaintiff has never had any device confiscated by officials at Coalinga or been in possession of child or adult pornography. Plaintiff has not violated any hospital policies or laws relating to ownership of his electronic devices. Plaintiff is not well-versed in computer skills and is unable to hack an electronic device.

From 2006 to 2017, up to one hundred Coalinga staff members have been terminated for bringing into Coalinga hospital grounds contraband items, including child pornography. Coalinga employees are still being terminated because they have been bribed by patients to bring contraband material into Coalinga. The contraband includes drugs, alcohol, tobacco, electronic devices, and illegal devices that, when used with other devices (tethering), make non-Wi-Fi capable devices capable of accessing the internet and communicating with other devices. All child pornography brought in to Coalinga was brought in by hospital staff. Several Coalinga employees were apprehended bringing child pornography into the institution nine months ago. In April/May of 2015, Coalinga police removed fifteen to twenty computers to investigate whether they had been used to store or access child porn. Plaintiff should not be punished for the criminal actions of others.

Plaintiff brings claims under the First, Fifth, Fourth, and Fourteenth Amendments. He seeks declarative and injunctive relief.

**B.     Notice of Emergency Amendments and Finding of Emergency**

Plaintiff includes as an exhibit to his complaint the Notice of Emergency Amendments and Finding of Emergency provided to Plaintiff by DSH. (See ECF No. 1, Ex. 1 at 24-37).

This document outlines the facts and reasoning DSH relied upon in making its determination that there was a need for emergency amendment of Regulation 4350. As such, the document is relevant in determining whether Plaintiff's allegations state a claim.  It is summarized here:

The Notice recites a need to control not just access to the internet and certain electronic devices, but data storage at state hospitals. (Id.) Digital data storage and communication has allowed patients to access, exchange and/or profit from illegal material, including child pornography. (Id. at 25.)

DSH has been working with the Fresno County District Attorney's office to investigate and prosecute child pornography cases. (Id. at 26.) In 2017, DSH made eleven arrests in regards to child pornography. (Id.) There have been five convictions of patients on charges relating to child pornography and several more are awaiting trial. (Id.) DSH has found that nearly all of the child pornography is being distributed through various electronic devices. (Id.)

Memory devices, even small devices, have the capability to store and copy digital information; and many electronic devices, even devices thought to be disconnected from the internet, allow for access to the internet. (Id. at 26-27.)

DSH further notes that:

[A]ccess to the internet provides full access to illegal materials, aerial views of DSH facilities, communication with victims, communication to create additional victims, and the ability to download illicit images for sale or sharing with other patients. However because the ability is in software format within currently authorized memory devices, it is not detectible as contraband through standard

6

room searches. Penal Code section 1546.1, adopted in 2015, mandates that a search of electronic devices is not permitted without permission by the possessor or a search warrant further frustrating the ability to enforce facility and public safety. . . This internet access creates danger for the public, the staff, and patients, as well as interferes with treatment by creating exposures, triggers, and temptations that are intended to be controlled in a secured inpatient mental health setting.

(Id. at 27.)

Gaming devices that access the internet are currently prohibited and those without internet access are allowed. (Id.) However, many recent gaming devices contain data storage capabilities, permitting patients to download illegal material to the device and then prevent the illegal material from being discovered in a standard room search. (Id.) These gaming devices also allow for copyright violations. (Id.) Therefore, the amendment would prohibit possession of gaming devices with accessible data and the ability to play non-proprietary inserts. (Id.)

The ability to burn DVDs and CDs allows for the distribution of illegal images, as well as copyright infringements. (Id.) This poses enforcement challenges as DSH does not have the staff needed to get warrants and to review disks to determine what material is appropriate. (Id.) Therefore the amendment would ban all CD/DVD burners and blank disks, but allows some ownership of CDs and DVDs provided by a manufacturer. (Id.)

DSH acknowledges that child pornography and other illegal materials exist within hospitals, but without the proposed amendment, it cannot address and remove them. (Id. at 29.)

IV.    **Analysis**

A.    **Capacity Issue**

As an initial matter, it is not clear whether Plaintiff is intending to bring these suits against Defendants in their official or individual capacities. Where, as here, the caption of the complaint is unclear, the Court will determine the capacity in which a defendant is being sued based on the claims asserted and nature of relief sought. Price v. Akaka, 928

F.2d 824, 828 (9th Cir. 1990) (citing Central Reserve Life Ins. Co. v. Struve, 852 F.2d 1158, 1161 (9th Cir. 1988)).

Here, the nature of the suit rather clearly indicates that Plaintiff is seeking redress for official actions and policies implemented by Defendants. Plaintiff alleges no personal wrongs on the part of the individual Defendants.

Plaintiff seeks only injunctive and declaratory relief. See Aholelei v. Dept. of Pub. Safety, 488 F.3d 1144, 1147 (9th Cir. 2007); Wolfson v. Brammer, 616 F.3d 1045, 1065-66 (9th Cir. 2010). A plaintiff pursuing claims against defendants in their official capacities must demonstrate that a policy or custom of the governmental entity of which the official is an agent was the moving force behind the violation. See Hafer v. Melo, 502 U.S. 21, 25 (1991); Kentucky v. Graham, 473 U.S. 159, 166 (1985). That is, the plaintiff must establish an affirmative causal link between the policy at issue and the alleged constitutional violation. See City of Canton, Ohio v. Harris, 489 U.S. 378, 385, 391-92 (1989); Van Ort v. Estate of Stanewich, 92 F.3d 831, 835 (9th Cir. 1996). Furthermore, "[a] plaintiff seeking injunctive relief against the State is not required to allege a named official's personal involvement in the acts or omissions constituting the alleged constitutional violation." Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1127 (9th Cir. 2013) (citing Hafer, 502 U.S. at 25.) "Rather, a plaintiff need only identify the law or policy challenged as a constitutional violation and name the official within the entity who can appropriately respond to injunctive relief." Id. (citing Los Angeles County v. Humphries, 562 U.S. 29, 35-36 (2010)).

Here Plaintiff alleges that current and proposed DSH policies unconstitutionally prohibit him and other patients from owning certain electronic devices and accessing the internet and force him to dispose of his validly accumulated electronic material. He seeks modification of these policies. Pam Ahlin, as the Director of DSH, and Brandon Price, as the Director of Coalinga, are appropriate defendants to respond to Plaintiff's requests.

1   Therefore, if and to the extent Plaintiff's claims are found to be cognizable, Plaintiff may

2   proceed with his suit against Defendants in their official capacities.

3        **B.    Substantive Due Process Issues**

4        Plaintiff claims that the conditions of his confinement violate his Fourteenth

5   Amendment right to substantive due process.

6        The Fourteenth Amendment substantive due process clause provides the

7   standard for evaluating the constitutionally protected interests of individuals who have

8   been involuntarily committed to a state facility. Youngberg v. Romeo, 457 U.S. 307, 322-

9   323 (1982); Jones v. Blanas, 393 F.3d 918, 931-32 (9th Cir.2004). Civilly committed

10  persons have a substantive due process right to be free from restrictions that amount to

11  punishment. United States v. Salerno, 481 U.S. 739, 746-47 (1987); Bell v. Wolfish, 441

12  U.S. 520, 535 (1979).

13       The Fourteenth Amendment requires the government to do more than provide the

14  "minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347

15  (1981). Rather, "due process requires that the nature and duration of commitment bear

16  some reasonable relation to the purpose for which the individual is committed." Jackson

17  v. Indiana, 406 U.S. 715, 738 (1972). "[T]he Fourteenth Amendment Due Process

18  Clause requires states to provide civilly-committed persons with access to mental health

19  treatment that gives them a realistic opportunity to be cured and released." Sharp v.

20  Weston, 233 F.3d 1166, 1172 (9th Cir. 2000) (citing Ohlinger v. Watson, 652 F.2d 775,

21  778 (9th Cir. 1980)).

22       An SVPA detainee is entitled to more considerate treatment than criminally

23  detained individuals, and when a SVPA detainee is confined in conditions identical to,

24  similar to, or more restrictive than those applied to individuals detained under criminal

25  codes, it is presumed that the detainee is being subjected to punishment. Jones, 393

26  F.3d at 932 (referencing Sharp, 233 F.3d at 1172-73). The SVPA "generally requires a

27  careful balancing of the rights of individuals who are detained for treatment, not

28                                         9

punishment, against the state's interests in institutional security and the safety of those housed at the facility." <u>Hydrick v. Hunter,</u> 500 F.3d 978, 990 (9th Cir. 2007), *vacated on other grounds by* <u>Hunter v. Hydrick</u>, 556 U.S. 1256 (2009).

Here, Plaintiff makes two claims that the regulations promulgated by DSH violate his substantive due process rights. He asserts that the regulations being applied to him, a civil detainee, are similar to or more restrictive than those applied to individuals detained under penal codes, suggesting he is being held in conditions designed to punish. He also claims that the limitations on access to the internet and possession of electronic devices and media storage are inherently punitive in nature.

The Court will apply the substantive due process criteria to each claim.

**1.    Regulations as Applied to Civil Detainees**

Plaintiff claims that the regulatory framework is punitive because the same or more restrictive regulations are applied to civil detainees as to individuals held pursuant to criminal codes.

Plaintiff is being held under the SVPA, Cal. Welf. & Inst. Code §§ 6600 et seq., which provides for the civil commitment of "a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." Cal. Welf. & Inst. Code § 6600(a)(1). Individuals committed under the SVPA are housed in Coalinga State Hospital; DSH is responsible for the operation of the facility and the provision of treatment. Cal. Wel. & Inst. Code § 6600.05 (a),(b); <u>see also</u> Cal. Wel. & Inst. Code § 4100 (b) (providing that DSH has jurisdiction over Coalinga).

DSH may adopt and enforce the rules and regulations necessary to carry out its duties. Cal. Wel. & Inst. Code §§ 4005.1, 4027, 4101. This includes promulgating regulations relating to the care and treatment of those detained under both penal and

civil codes. Cal. Wel. & Inst. Code § 4027. All DSH institutions are governed by uniform rules and regulations, unless otherwise provided. Cal. Wel. & Inst. Code § 4101.

Under Title 9 of the California Code of Regulations, DSH has adopted rights and related procedures for all individuals (excluding those committed under the Lanterman-Petris-Short Act[1] ("LPS")) placed in or committed to state hospitals. <u>See</u> Cal. Code Regs. tit. 9, § 880-892. These regulations afford non-LPS patients deniable and undeniable rights. Cal. Code Regs. tit. 9, § 883-884. Among the rights that may be denied in accordance with established laws are the rights to personal possessions and individual secured storage facilities. Cal. Code Regs. tit. 9, § 884(b)(1,2). These regulations also provide that "[n]on LPS-patients shall not have access to the internet." Cal. Code Regs. tit. 9, § 891. Additionally, Title 9, Regulation 4350, which applies to all state hospitals and all DSH patients, prohibits access to nearly all electronic devices that can connect to the internet. <u>See</u> Cal. Code Regs. tit. 9, § 4350.

Plaintiff alleges that this regulatory framework imposes the same punitive conditions of confinement upon him, a civil detainee, as individuals held under penal codes.

When civil committees are held in conditions similar to or more restrictive than those held under criminal commitments there is a presumption that the detention is punitive. <u>Jones</u>, 393 F.3d at 932. However, <u>Jones</u> presented a much more extreme version of "similar conditions": there a civil detainee held under the SVPA was housed for over two (pretrial) years in a county jail under all of the same conditions as individuals being held for criminal punishment. 393 F.3d at 924. Plaintiff here is not being held under conditions designed for criminal detention. He is in a facility designed and operated to provide for the safety of mentally ill offenders undergoing inpatient treatment. DSH regulations are intended to govern the treatment of mentally ill

---

[1] Cal. Welf & Inst. Code, sec. 5000 et seq. The LPS Act concerns certain individuals involuntarily civilly committed to mental health institutions in the State of California. Only one individual committed under this act is currently being held at Coalinga.

| 1 | individuals, both civilly and criminally committed. <u>See</u> Cal. Code Regs. tit. 9, § 880; Cal |
| 2 | Wel & Inst Code § 4027; (<u>See also</u> ECF No. 1, Ex. 1 at 27) (noting that Regulation 4350 |
| 3 | is intended to assist in treatment by preventing access to triggers). The regulations |
| 4 | prohibiting internet and electronic devices were promulgated to address concerns |
| 5 | relating to all patients at DSH facilities, both the civilly detained and the criminally |
| 6 | imprisoned. (ECF No. 1, Ex. 1 at 25.) The regulations are uniformly applied across all |
| 7 | state hospitals, Cal Wel & Inst Code § 4101, to patients committed under both civil and |
| 8 | penal codes, <u>See</u> Cal Wel & Inst Code § 4027; Cal. Code Regs. tit. 9, § 881(o). The |
| 9 | mere fact that the same regulations are applied to those held under civil codes as those |
| 10 | held under penal codes does not mean the former are being held in punitive conditions. |
| 11 |     (In passing, it is noted that Plaintiff is incorrect in alleging that Title 9 is a CDCR |
| 12 | regulation which should not be applied to him and in claiming that Title 22 is the one |
| 13 | which should be applied to him. Title 9 of the California Code of Regulations, Division 1 |
| 14 | provides for regulations governing the Department of Mental Health, and Title 22 of the |
| 15 | California Code of Regulations applies to Social Security. <u>See</u> Cal. Code Regs. tit. 9, §§ |
| 16 | 400-4717; Cal. Code Regs. tit. 22.) |
| 17 |     Finally, in this regard, Plaintiff alleges that state and county prisoners in other |
| 18 | California facilities have greater access to the internet and electronic devices than |
| 19 | patients at Coalinga, which necessarily means he is being held under regulations more |
| 20 | restrictive than those designed to punish prisoners. This logic is flawed. Confinement |
| 21 | facilities obviously must be designed and operated in ways appropriate to the particular |
| 22 | types of inmates being housed there. As Plaintiff acknowledges, patients at Coalinga |
| 23 | with access to the internet and electronic devices have used that access to download |
| 24 | and distribute child pornography. Such abuse is the antithesis of what is appropriate for |
| 25 | these inmates and the safety of society. Such misuse of these devices is criminal and is |
| 26 | currently under criminal investigation. Certainly, it is reasonable for the system to design |
| 27 | protections against such abuse even if those protections are unique to that facility or |
| 28 | |

group of inmates. Quite simply, the unique challenges of the security situation at state hospitals as reflected in Plaintiff's complaint overcomes any otherwise existing inference, that the regulatory framework is punitive simply because it is harsher than at other facilities.

In summary, the Court finds, based upon the information before it at this time, that the regulatory framework governing DSH and Coalinga was not designed to punish and does not create punitive conditions. Plaintiff's claim that the regulatory framework is punitive is not cognizable as pled.

### 2. Access to Internet and Electronic Devices

Plaintiff also specifically challenges the regulations prohibiting access to the internet and limiting the electronic devices patients may possess. Though his suit was instigated by the promulgation of the amendments to Regulation 4350, Plaintiff challenges all regulations at Coalinga that limit his access to the internet and electronic devices. See Cal. Code Regs. tit. 9, §§ 884(b)(1,2), 891. Plaintiff alleges that these restrictions are unnecessarily broad and amount to punishment because he is being denied access to information and devices which could facilitate his treatment.

Restrictions are permitted if they are "incident of some other legitimate government purpose." Valdez v. Rosenbaum, 302 F.3d 1039, 1045 (9th Cir. 2002). To be permissible a restriction need not be "an exact fit, nor does it require showing a least restrictive alternative." Id. at 1046 (citation omitted). Legitimate, non-punitive government interests include ensuring a detainee's presence at trial, maintaining jail security, and effective management of a detention facility. Hallstrom v. City of Garden City, 991 F.2d 1473, 1484 (9th Cir. 1993). The Ninth Circuit has recognized that restrictions may be considered punitive (1) where the challenged restrictions are expressly intended to punish, or (2) where the challenged restrictions serve an alternative, non-punitive purpose but are nonetheless excessive in relation to the alternative purpose, or are

employed to achieve objectives that could be accomplished in alternative and less harsh methods. <u>Jones</u>, 393 F.3d at 932 (citations and quotations omitted).

Here, there is nothing to suggest the regulations are intended to punish. The facts as alleged by Plaintiff and supported by exhibits to his complaint indicate genuine and significant safety concerns at Coalinga relating particularly to the storage and sharing of child pornography. These are reasonably characterized as adversely impacting the security of the institution and the public and apparently conflict with treatment regimens. Not the least of such concerns is society's legitimate concern with re-victimization of children resulting from sharing and re-accessing child pornography. <u>See</u> <u>United States v. Kearney</u>, 672 F.3d 81, 94 (1st Cir. 2012) (noting the continuing harm that results from the distribution and possession of child pornography). Maintaining institutional security and providing for the safety of patients and the public are legitimate government interests. <u>Wolfish</u>, 441 U.S. at 566; <u>Hallstrom</u>, 991 F.2d at 1484. These regulations serve a legitimate government interest.

However, Plaintiff alleges that the regulations are overly broad and that safety concerns could be met with less restrictive measures. He alleges he need not and should not be denied all access to the internet, and he complains that Regulation 4350 prohibits, and would allow for the confiscation of, items that do not pose a security risk. Additionally Plaintiff indicates that the regulations would compel him to destroy thousands of irreplaceable digital files, including photographs and legal files, he has scanned.

Each of these claims will be addressed in turn below.

### a. Prohibition on Internet Access

Plaintiff's alleges that total prohibition of internet access is overly broad, constitutes punishment of one who has committed no violations, and deprives him of access to a beneficial therapeutic tool.

Even if there were nothing about Plaintiff's condition or confinement that warranted denial of internet access to him individually, the facts as presented in his complaint and attached exhibits reflect that inmate access to the internet allows — indeed has allowed -- for the re-victimization of children due to illegal sharing and copying of pornography, plus copyright infringement and illicit communication without and within DSH facilities. Although Plaintiff himself may not have abused such access, it is reasonably clear that allowing even select inmates access to the internet could very well interfere with overall security of the facility as it, reportedly, has to date. Plaintiff presents no facts or law to suggest that such broad security concerns must give way to allowing non-abusive inmates to be excepted from the restrictions. Regrettably, perhaps, it is the nature of such places and such confinement that broad policies are applied uniformly. This claim is not cognizable as pled.

### b.    Prohibition on Electronic Devices and Storage

Plaintiff alleges that some of the items prohibited by Regulation 4350 do not pose security risks and that less restrictive methods could be used to alleviate legitimate security concerns. Examples include the Nintendo Game Boy Advance which cannot connect to the internet, digital recorders that copy television shows, and commercially packaged CDs and DVDs.

It is not clear from the text of Regulation 4350 whether a Game Boy Advance or a digital recorder that cannot connect to the internet would be prohibited under the regulations. Regulation 4350 provides that "electronic devices with the capability to connect to a wired . . . and/or a wireless . . . communications network to send and/or receive information" are to be prohibited. Cal. Code Regs. tit. 9, § 4350(a). This includes, "Gaming devices with digital memory storage ability, the ability to access the internet, or the ability to play games or other media not specifically designed for the device," Cal. Code Regs. tit. 9, § 4350(a)(4)(E); and "[d]igital media recording devices, including but not limited to CD, DVD, Blu-Ray burners," Cal. Code Regs. tit. 9, § 4350(a)(2).

15

Regulation 4350 further states, "Electronic items patients are permitted . . . . include: (1) One television or computer monitor (1) DVD, Blu-ray, or similar player; one (1) CD player; and one (1) radio or music player . . . . Tablets or other devices designed for confined individuals through authorized vendors." Cal. Code Regs. tit. 9, § 4350(b)(1,3).

Plaintiff asserts that neither of the devices described by Plaintiff can connect to the internet or store electronic data from other sources. Therefore, a plain reading of the regulatory text suggests neither would be banned under Regulation 4350's prohibition against electronic devices that can send or receive information. See Cal. Code Regs. tit. 9, § 4350 (a). However, these particular devices are not included on the list of items that are explicitly allowed. See Cal. Code Regs. tit. 9, § 4350 (b).

Because Plaintiff is proceeding pro se, his complaint is to be construed liberally. Hebbe, 627 F.3d at 342. Construing the facts in favor of Plaintiff, allegations that these devices would be banned is sufficient to state a claim. Prohibiting devices that are unable to connect to the internet and unable to store electronic data may be beyond the scope of the legitimate government interest and thus "excessive in relation to the alternative purpose." Jones, 393 F.3d at 932. Therein lies a cognizable claim.

Plaintiff also alleges that commercially manufactured CDs and DVDs do not pose a security risk because they cannot be recorded over and therefore cannot be used to facilitate the transfer or storage of contraband digital material. Regulation 4350 allows patients no more than thirty commercially manufactured CDs and DVDs in factory-original packaging in a patient's room or unit storage; additional manufactured disks may be stored in off-unit storage. Cal. Code Regs. tit. 9, § 4350 (b)(2). Legally purchased commercial disks would not appear to pose a security risk. The facts currently before the Court do not include any justification for prohibiting the number of disks that can be stored on-site. Thus, the allegation that the restriction is more than necessary or appropriate to prevent illicit electronic storage of digital contraband is sufficient at this stage of the proceedings to state a cognizable claim.

16

### c. Scanned Digital Documents

Plaintiff alleges that Regulation 4350 will require him to destroy thousands of digital files that are irreplaceable, including confidential legal material and personal photos.

Regulation 4350 provides that:

> patients who are currently in personal possession of . . . any of the contraband items . . . may grant permission to the Department for the item to be reviewed for illegal material . . . . If consent is granted by the patient and there is no illegal material found on the contraband items set forth in subsection (a), the item shall be mailed to a location designated by the patient. If consent is not granted by the patient to search the contraband items set forth in subsection (a), the hospital shall destroy the contraband item.

Cal. Code Regs. tit. 9, § 4350(e).

The Regulation does give individual hospitals the discretion to permit onsite storage of legal and therapeutic material in digital format and to allow inmates supervised access to such material. Cal. Code Regs. tit. 9, § 4350(d). However, there is no indication that Coalinga has or will exercise that discretion in that way.[2] If it does not, Plaintiff must ship all his stored digital data to a third party or have it destroyed.

In the Notice of Emergency Amendments, DSH justifies the regulation and its procedure by noting: It lacks the manpower to review each copied disk for contraband on an ongoing basis. (See ECF No. 1, Ex. 1 at 27). Even if an item were initially searched and found lacking in contraband, there is nothing to prevent a patient from later copying illicit material on to it. DSH would not be able to search the disk without probable cause. (Id.) DSH does not have the resources to enable it to seek and secure search warrants with sufficient regularity to prevent the abuse it has experienced to date. (Id. at 26-27.) In short, any on-site unsupervised storage of digital documents would allow for the potential presence of digital contraband not capable of being found in a

---

[2] Plaintiff's complaint referred to a similar provision contained in the proposed regulations that would permit storage of non-contraband material on site after a search; however, this provision was not adopted in the final regulatory text. (See ECF No. 1, Ex. 1 at 37) (providing under Cal. Code Regs. tit. 9, § 4350(e) that items could be stored on-site after a search). 17

standard room search. The restriction is reasonably related to the legitimate government interest of preventing patients from storing illicit digital material and preventing the very abuses which have recently been uncovered.

The Court has grave concerns about the potentially devastating effect of forcing an inmate to put all of his legal materials in the hands of a third party or see them destroyed.[3] The regulatory procedure essentially presumes each inmate has a reliable, technologically adept, third party willing to assume the time, trouble, potential expense, and responsibility of faithfully maintaining, retrieving and providing to the inmate hard copies of items in the inmate's legal files on request. In practice, however, the availability of such a person is unlikely, if not nonexistent.[4] Forfeiture of all of one's legal documents would be a very high price to pay for the inability to find such a person. But even if a proper custodian where located, the Court can anticipate that the difficulties and pitfalls of such a retrieval system would doom it to failure. At best each inmate would have to recall what he had stored and where it was stored and specifically request it and then await its retrieval and delivery via hard copy to him. Absent such specificity in memory and request, the third party would have to conduct a search by topic or procedural issue, a challenging and questionably successful undertaking for a person without legal training. Such procedures and the associated pitfalls pose a very real risk of significantly impeding one's access to the Courts, perhaps even frustrating it completely. Of course, the alternative of destroying ones complete legal files (accumulated electronically at the direction of DSH) could, and likely would, do irreparable damage to ones pursuit of legal relief.

---

[3] By "legal materials," "legal files," and "legal documents," the Court assumes that Plaintiff refers to all pleadings and other papers relating to his detention or prior incarceration, challenges to it, and other constitutional challenges to his plight. Cf. Lewis v. Casey, 518 U.S. 343, 354 (1996) (limiting the availability of access to courts claims to direct criminal appeals, habeas petitions, and civil rights actions). The Court's above-expressed concern about depriving a detainee of such materials does not extend to personal photographs. While perhaps third party maintenance or even destruction of photos is unfortunate, it does not create the threat to inmates' valuable Constitutional rights.

[4] Plaintiff's note that he has no family members to help him buy electronic devices suggests he may be in such a category.

18

The substantive due process analysis requires the Court to determine whether the regulation is "excessive in relation to its non-punitive purpose or is employed to achieve objectives that could be accomplished in so many alternative and less harsh methods[.]" Jones, 393 F.3d at 934 (citations and internal alterations omitted). In this regard, the Court is particularly mindful of the significant interests at stake in limiting, or eliminating, Plaintiff's access to legal materials. As discussed below, the allegations are presently insufficient to state an access to courts claim because Plaintiff has yet to suffer an actual injury. See Lewis v. Casey, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L. Ed. 2d 606 (1996) (finding that an access to courts claim requires an actual injury). But the denial alleged here is so overarching, and so possibly complete, that a plaintiff may be foreclosed from meeting that burden because he may be divested of documents needed to show his loss. At the pleading stage, the Court concludes that these factors are sufficient to make the Regulation excessive in relation to its non-punitive purpose. At present, the Court is unconvinced that DSH's legitimate objectives could not be accomplished with less harsh methods and results.

Accordingly, the Court finds that Plaintiff has raised sufficient questions to allow the claim to go forward and to require Defendants to respond.

### C. Procedural Due Process

Plaintiff may also be intending to claim that his Fourteenth Amendment procedural due process rights are violated by the regulations.

Procedural due process under the Fourteenth Amendment protects individuals from the deprivation of property without due process of law. U.S. Const. amend. XIV, § 1. The Ninth Circuit has not addressed the precise standard to be applied to procedural due process claims brought by civil detainees, however they have found that "individuals detained under the SVPA must, at a minimum, be afforded the rights afforded prisoners confined in a penal institution." Hydrick 500 F.3d 978, 998 (9th Cir. 2007). District Courts have applied the same standards for prisoners to civil detainees. See e.g., Koch v. King,

No. 1:15-cv-00438 SKO (PC), 2017 U.S. Dist. LEXIS 5027 (E.D. Cal. Jan. 11, 2017);
Cerniglia v. Price, No. 117CV00753AWIJLTPC, 2017 WL 4865452 (E.D. Cal. Oct. 27,
2017); Allen v. King, No. 1:06-cv-01801-BLW-LMB, 2016 U.S. Dist. LEXIS 108748 (E.D.
Cal. Aug. 16, 2016); Smith v. Ahlin, No. 1:16-cv-00138-SKO (PC), 2016 U.S. Dist. LEXIS
141587 (E.D. Cal. Oct. 12, 2016);  Johnson v. Knapp, No. CV 02-9262-DSF (PJW), 2008
U.S. Dist. LEXIS 125001, at *14 (C.D. Cal. Dec. 17, 2008); Johnson v. Witter, No. 3:13-
cv-00689-MMD-VPC, 2015 U.S. Dist. LEXIS 41941, at *8-9 (D. Nev. Mar. 31, 2015).

The Due Process Clause protects prisoners from being deprived of property
without due process of law, Wolff v. McDonnell, 418 U.S. 539, 556, 94 S. Ct. 2963, 41 L.
Ed. 2d 935 (1974), and prisoners have a protected interest in their personal property.
Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974). An authorized, intentional deprivation
of property is actionable under the Due Process Clause. See Hudson v. Palmer, 468
U.S. 517, 532, n.13 (1984) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422, 102 S.
Ct. 1148, 71 L. Ed. 2d 265 (1982)); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985).
An authorized deprivation is one carried out pursuant to established state procedures,
regulations, or statutes. Logan, 455 U.S. at 436; Piatt v. MacDougall, 773 F.2d 1032,
1036 (9th Cir. 1985) see also  Knudson v. City of Ellensburg, 832 F.2d 1142, 1149 (9th
Cir.1987).  Authorized deprivations of property are permissible if carried out pursuant to
a regulation that is reasonably related to a legitimate penological interest. Turner v.
Safley, 482 U.S. 78, 89 (1987).

To have a property interest, Plaintiff must demonstrate "more than an abstract
need or desire for it. ... He must, instead, have a legitimate claim of entitlement to it"
under state or federal law. Board of Regents v. Roth, 408 U.S. 564, 577 (1972).

The question presented is whether a civil detainee has a property right to items in
his possession that were once, but no longer, authorized, where Plaintiff is allowed to
transfer those items to a third party of his choosing outside the institution. The Ninth
Circuit has not yet reached this issue. However other courts have found that "while an

20

inmate's ownership of property is a protected property interest that may not be infringed upon without due process, there is a difference between the right to own property and the right to possess property while in prison." Searcy v. Simmons, 299 F.3d 1220, 1229 (10th Cir. 2002) (quoting Hatten v. White, 275 F.3d 1208, 1210 (10th Cir. 2002)). Thus, courts have found that when property policies are revised to prohibit items but inmates and detainees are allowed to store the items outside of the institution, no property interest is implicated and no process is due. See e.g., Graham v. Sharp, Civil Action No. 10-5563 (SRC), 2011 U.S. Dist. LEXIS 66675, at *45 (finding no constitutionally-recognized property interest for civil detainees in the continued ownership of previously authorized electronic devices in the face of newly implemented regulations that would prohibit and confiscate these devices); Davis v. Powers, No. C08-5751 FDB/KLS, 2010 U.S. Dist. LEXIS 52067, at *27 (W.D. Wash. Apr. 16, 2010) (finding no property interest when a television had to be mailed home because it was in conflict with regulations); Trenton v. Schriro, No. CIV 06-2905-PHX-MHM (DKD), 2007 U.S. Dist. LEXIS 65376, at *4-5 (D. Ariz. Aug. 31, 2007) (no property right for previously allowed typewriter where plaintiff had the option to mail it home rather than have it confiscated); see also Knight v. Yarborough, No. CV 03-01210-AG (VBK), 2011 U.S. Dist. LEXIS 113710, at *54 (C.D. Cal. Aug. 22, 2011) (noting that "[i]nmates do not have a constitutional right to keep, or to dispose of contraband materials as they wish."); Dunbar v. A.D.O.C., No. CV 08-420-PHX-SMM (MEA), 2008 U.S. Dist. LEXIS 40848, at *11 (D. Ariz. May 12, 2008) (finding no property right deprivation for confiscation of a television pursuant to prison regulations).

Here, although Plaintiff would be denied the immediate possession of noncompliant property on-site, he can mail it, if free of illicit material, to a location of his choice. See Cal. Code Regs. tit. 9, § 4350(e). Since Plaintiff would retain ownership of the items, no deprivation would have occurred, no protected property right would have been implicated, and so no process would be due. See Valdez v. Rosenbaum, 302 F.3d

1039, 1045 (9th Cir.2002) ("Valdez did not have a state-created liberty interest in using a telephone during his pretrial confinement. Accordingly, his procedural due process claims fail.").

Finally, even if Plaintiff had a due process interest in the property at issue in Regulation 4350, the process afforded appears to have been adequate. "'Ordinarily, due process of law requires [notice and] an opportunity for some kind of hearing prior to the deprivation of a . . . property interest.'" Halverson v. Skagit County, 42 F.3d 1257, 1260 (9th Cir. 1995) (internal quotations and citations omitted). "However, when the action complained of is legislative in nature, due process is satisfied when the legislative body performs its responsibilities in the normal manner prescribed by law." Id. "[G]overnmental decisions which affect large areas and are not directed at one or a few individuals do not give rise to the constitutional due process requirements of individual notice and hearing; general notice as provided is sufficient." Id. at 1260-61. This appears to have been met here.

This claim is not cognizable as drafted. Plaintiff will be given leave to amend.

**D.      Fifth Amendment Due Process**

To the extent Plaintiff intended to bring a Fifth Amendment Due Process claim, "the Fifth Amendment's due process clause applies only to the federal government." Bingue v. Prunchak, 512 F.3d 1169, 1174 (9th Cir. 2008).

Plaintiff is a state civil detainee and Defendants are state officials. His due process claims are properly analyzed under the Fourteenth Amendment above. They are not cognizable and are not capable of cure through amendment.

**E.      Freedom of expression**

Plaintiff seeks to bring claims that his freedom of expression under the First Amendment is violated by his denial of access to the internet.

The First Amendment states, in relevant part, "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. The Supreme Court has

22

recognized that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). Although prisoners retain First Amendment rights while incarcerated, the exercise of such rights is limited by the fact of confinement and the needs of the penal institution. See Wolfish, 441 U.S. at 545; Prison Legal News v. Cook, 238 F.3d 1145, 1149 (9th Cir. 2001). Turner v. Safely, 482 U.S. 78 (1987). Challenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system. Pell v. Procunier, 417 U.S. 817, 94 (1974). Similarly, "[C]ivilly committed persons retain those First Amendment rights not inherently inconsistent with the circumstances of their detention." Hydrick, 500 F.3d at 991 (citing Turner, 482 U.S. at 89); see also Marten v. Richards, No. C09-5733RBL/JRC, 2010 U.S. Dist. LEXIS 64911, at *9 (W.D. Wash. June 1, 2010) (analyzing restrictions of the First Amendment for civilly detained individuals in terms of the legitimate policies and goals of the institution).

Here, Plaintiff is prohibited from accessing the internet or owning certain electronic devices. This Court is unaware of any court that has found that a civil detainee has a First Amendment right to possess and use electronic devices or access the internet. See Allen v. King, No. 1:06-cv-01801-BLW-LMB, 2016 U.S. Dist. LEXIS 108748, at *20-21 (E.D. Cal. Aug. 16, 2016) (collecting cases); see also Carmony v. Cty. of Sacramento, No. CIV S-05-1679 LKK GGH P, 2008 U.S. Dist. LEXIS 11137, at *48 (E.D. Cal. Feb. 13, 2008) (noting that, "This court is aware of no case standing for the proposition that civil detainees have a free-standing First Amendment right to access computers and/or the internet."); Telucci v. Withrow, No. 1:16-cv-00025-JLT (PC), 2016 U.S. Dist. LEXIS 66334, at *15 (E.D. Cal. May 19, 2016) (finding no first amendment right to the internet for civil detainees). Even if Plaintiff were to have a constitutionally protected right to the internet, there is a rational connection between the prohibition of

access to the internet and electronic devices and a legitimate government interest in ensuring the security of the public and the facility.

Plaintiff fails to state a cognizable claim here as well.

**F.      Ex Post Facto and Double Jeopardy**

Plaintiff alleges that the regulations place him in the situation of being punished twice for the same crime. He alleges that this is a violation of the Ex Post Facto and Double Jeopardy clauses of the Constitution.

In Hydrick v. Hunter, 500 F.3d at 993, the Ninth Circuit held that the civil nature of sexually violent predator commitment forecloses challenges based on violations of the Ex Post Facto and Double Jeopardy clauses. Accordingly, Plaintiff's claims are not cognizable and not capable of cure through amendment.

**G.      Access to Courts**

The Constitution guarantees detained people meaningful access to the courts. Bounds v. Smith, 430 U.S. 817, 822 (1977). This includes civil detainees. Hydrick, 500 F.3d at 990; Cornett v. Donovan, 51 F.3d 894, 898 (9th Cir. 1995) (holding that "right of access [to the courts] is guaranteed to people institutionalized in a state mental hospital regardless of whether they are civilly committed after criminal proceedings or civilly committed on grounds of dangerousness").

Detainees and prisoners have the right to pursue claims, without active interference, that have a reasonable basis in law or fact. See Silva v. Di Vittorio, 658 F.3d 1090, 1103-04 (9th Cir. 2011) (finding that repeatedly transferring the plaintiff to different prisons and seizing and withholding all of his legal files constituted active interference) *overruled on other grounds as stated by* Richey v. Dahne, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015). This right forbids state actors from erecting barriers that impede the right of access to the courts of incarcerated persons. Id. at 1102 (internal quotations omitted). However, in order to state a colorable claim for denial of access to the courts,

Plaintiff must allege that he suffered an actual injury. Lewis v. Casey, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L. Ed. 2d 606 (1996). "Actual injury" means a "specific instance in which an inmate was actually denied access to the courts." Sands v. Lewis, 886 F.2d 1166, 1171 (9th Cir. 1989).

### H.    Fourth Amendment

Plaintiff seeks to bring claims under the Fourth Amendment against Defendants for violating his Fourth Amendment right to privacy.

The Fourth Amendment protects against unreasonable searches and seizures. Prisoners "do not forfeit all constitutional perfections" due to incarceration. Wolfish, 441 U.S. at 545. However, the "right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." Hudson, 468 U.S. at 527-28.

Civil detainees have, at best, "a diminished expectation of privacy after commitment to a custodial facility." Bell, 441 U.S. at 557. The Ninth Circuit has found that a limited Fourth Amendment right to be free of unreasonable search and seizure extends to civil detainees. Hydrick, 500 F.3d at 993. A search will violate a civilly detained individual's Fourth Amendment rights if it is "arbitrary, retaliatory, or clearly exceeds the legitimate purpose of detention." Meyers v. Pope, 303 F. App'x 513, 516 (9th Cir. 2008); Hydrick, 500 F.3d at 993. In the civil detention context, "the reasonableness of a particular search [or seizure] is determined by reference to the [detention] context.'" Hydrick, 500 F.3d at 993 (quoting Michenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir. 1988)). In the context of secure civil institutions, such as at issue here, there are other concerns that mirror those that arise in the prison context, e.g., "the safety and security of guards and others in the facility, order within the facility and the efficiency of the facility's operations." Id. (quotations omitted).

Plaintiff fails to allege a cognizable claim. The facts as alleged indicate that DSH

regulations for searching electronic devices and storage are reasonably related to a legitimate interest. Regulation 4350 would allow for Plaintiff to consent to a search and non-contraband material would be sent to a location of Plaintiff's designation. Cal. Code Regs. tit. 9, § 4350(e). These searches allow for DSH to find and remove illicit digital material and secure the facility. There is nothing to suggest the action is arbitrary or retaliatory. Therefore, this does not constitute an unreasonable search. This claim is not cognizable. Plaintiff will be given leave to amend.

## VI.    Conclusion and Order

Plaintiff's complaint states a cognizable substantive due process claim against Defendants Ahlin and Price in their official capacities.

The remaining claims are not cognizable as pled. The Court will grant Plaintiff the opportunity to file an amended complaint to cure noted defects, to the extent he believes in good faith he can do so. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Alternatively, Plaintiff may forego amendment and notify the Court that he wishes to stand on his complaint. See Edwards v. Marin Park, Inc., 356 F.3d 1058, 1064-65 (9th Cir. 2004) (plaintiff may elect to forego amendment).

Alternatively, if Plaintiff does not wish to file an amended complaint, and he is agreeable to proceeding only on the claims found to be cognizable, he may file a notice informing the Court that he does not intend to amend, and he is willing to proceed only on his cognizable claims. The undersigned will then recommend that his remaining claims be dismissed, and the Court will provide Plaintiff with the requisite forms to complete and return so that service of process may be initiated on Defendants Ahlin and Price.

If Plaintiff chooses to amend, he must demonstrate that the alleged acts resulted in a deprivation of his constitutional rights. Iqbal, 556 U.S. at 677-78. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 555). Plaintiff should note that although he has been

given the opportunity to amend, it is not for the purposes of adding new claims. <u>George v. Smith</u>, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints). Plaintiff should carefully read this screening order and focus his efforts on curing the deficiencies set forth above.

If Plaintiff files an amended complaint, it should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, <u>Iqbal</u>, 556 U.S. at 676-677. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ." <u>Twombly</u>, 550 U.S. at 555 (citations omitted).

Finally, an amended complaint supersedes the prior complaint, <u>see</u> <u>Loux v. Rhay</u>, 375 F.2d 55, 57 (9th Cir. 1967), and it must be "complete in itself without reference to the prior or superseded pleading," Local Rule 220.

Accordingly, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a blank civil rights complaint form;

2. Within thirty (30) days from the date of service of this order, Plaintiff must:

   a. File an amended complaint curing the deficiencies identified by the Court in this order, or

   b. Notify the Court in writing that he does not wish to file an amended complaint and he is willing to proceed only on the claim found to be cognizable in this order; or

   c. Notify the Court in writing that he wishes to stand on his complaint as written; and

/ /

//

//

//

27

2. If Plaintiff fails to comply with this order, the undersigned will recommend the action be dismissed for failure to obey a court order and failure to prosecute.

IT IS SO ORDERED.

Dated:   February 20, 2018        /s/ *Michael J. Seng*
                                  UNITED STATES MAGISTRATE JUDGE