1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

### EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  EDWARD J. JOHANNECK, | Case No.  1:18-cv-00051-LJO-SAB (PC) |
| 12  Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSING CERTAIN CLAIMS |
| 13  v. | |
| 14  PAM AHLIN, et al., | (ECF No. 13.) |
| 15  Defendants. | OBJECTIONS DUE WITHIN THIRTY DAYS |
| 16 | |

17

18      Plaintiff Edward J. Johanneck, a civil detainee, is appearing pro se and in forma pauperis in

19 this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff's complaint was screened on February

20 21, 2018, and Plaintiff was directed to either notify the Court that he is willing to proceed on the

21 claims found to be cognizable in the screening order or file an amended complaint.  (ECF No. 8.)

22 After being granted an extension of time, Plaintiff filed a first amended complaint on April 16, 2018.

23 (ECF No. 13.)

24                                              **I.**

25                              **SCREENING REQUIREMENT**

26      Notwithstanding any filing fee, the court shall dismiss a case if at any time the Court

27 determines that the complaint "(i) is frivolous or malicious; (ii) fails to state a claim on which relief

28 may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."

1

28 U.S.C. § 1915(e)(2); see Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000) (section 1915(e) applies to all in forma pauperis complaints, not just those filed by prisoners); Calhoun v. Stahl, 254 F.3d 845 (9th Cir. 2001) (dismissal required of in forma pauperis proceedings which seek monetary relief from immune defendants); Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (district court has discretion to dismiss in forma pauperis complaint under 28 U.S.C. § 1915(e)); Barren v. Harrington, 152 F.3d 1193 (9th Cir. 1998) (affirming sua sponte dismissal for failure to state a claim).  The Court exercises its discretion to screen the plaintiff's complaint in this action to determine if it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).

In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a).  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

In reviewing the pro se complaint, the Court is to liberally construe the pleadings and accept as true all factual allegations contained in the complaint.  Erickson v. Pardus, 551 U.S. 89, 94 (2007).  Although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true.  Iqbal, 556 U.S. at 678.  "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).  Therefore, the complaint must contain sufficient factual content for the court to draw the reasonable conclusion that the defendant is liable for the misconduct alleged.  Iqbal, 556 U.S. at 678.

## II.

### FIRST AMENDED COMPLAINT ALLEGATIONS

Plaintiff is a civil detainee at Coalinga State Hospital ("CSH") facing commitment as a

sexually violent predator ("SVP") under California's Sexually Violent Predator Act ("SVPA"), California Welfare and Institutions Code, section 6600 et seq. Plaintiff brings this action against Pam Ahlin, Director of California Department of State Hospitals, and Brandon Price, Executive Director of CSH, in their individual and official capacities, alleging that new revisions to section 4350 of Title 15 of the California Code of Regulations violate his constitutional rights under the First, Fourth, and Fourteenth Amendments to own and possess factory commercial CDs and DVDs, electronic gaming devices, and associated hardware, and to possess legal material stored on a state issued flash drive. (First Am. Compl. ("FAC") 5,[1] ECF No. 13.) Plaintiff's complaint is comprised mainly of legal argument making it somewhat unclear which claims Plaintiff is attempting to pursue in this action. The following factual allegations are included in the first amended complaint.

Plaintiff's first claim alleges that section 4350 became punitive when his property was confiscated as allowed by the revisions to section 4350. (FAC 3.) Plaintiff's second claim alleges that he has been denied his constitutional rights to own gaming devices, any DVDs and CDs over 30, and that the right to possess only property as space permits. (FAC 3.) Plaintiff alleges violations of his rights under the First, Fourth, and Fourteenth Amendments. (FAC 3.) Plaintiff also contends that Defendants refuse to install formats into computers to allow Plaintiff access to his stored electronic materials such as legal briefs for cases pending before the courts. (FAC 3.)

On December 27, 2017, Plaintiff received a copy of proposed changes to section 4350 of Title 9 of the California Code of Regulations which was being implemented as an emergency regulation. (FAC 6.) Plaintiff contends that the conditions under which he is being confined are now more restrictive than those of prisoners serving a punitive sentence in the California State Prison. (FAC 6.) Plaintiff also alleges that the revised regulations are only being implemented at CSH, and not at any other state hospital although the regulation is supposed to be applied to all state hospitals. (FAC 7.)

Plaintiff states that the regulations are punitive because they ban electronic devices such as computers, games, radios, MP3 players, etc. (FAC 7.) By implementing these changes, Plaintiff

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

contends that he has been returned to a punitive setting more restrictive than when he was incarcerated in the California state prison system. (FAC 6-7.)

Plaintiff alleges that removing his property and prohibiting him from owning and possessing such property deprives him of his rights under the First, Fourth, and Fourteenth Amendments. (FAC 7.) Plaintiff also contends that his rights have been violated by implementing and enforcing a computer moratorium preventing him from purchasing approved personal laptop computers and electronic games and then later implementing the new regulation that allowed Defendants to confiscate his electronic games and computers already in his possession. (FAC 7-8.)

The Department of State Hospitals (DSH) has recognized the therapeutic advantages of patients owing and possessing certain types of electronic devices to occupy their time during non-treatment or therapeutic hours. (FAC 8.) One of these devices is the Nintendo Game Boy Advance which was allowed within the DSH for approximately 20 years and was a pre-internet device. (FAC 8.)

On March 7, 2006, the DSH allowed patients to own and possess laptop computers, DVD players, and Sony PlayStation Portables. (FAC 8.) The devices were allowed as employees could modify the devices to prevent access to the internet. (FAC 8.) The devices were determined to be not accessible up to five miles or more from the hospital grounds. (FAC 8.) Plaintiff was then allowed to purchase a palm pilot. (FAC 8.) Administrators at the time stated that ownership of these devices would enhance the therapeutic atmosphere of the hospital. (FAC 8.)

In October of 2009, the then Director of State Hospitals implemented section 4350 which prohibited electronic devices that had the capability to connect to the internet, including desktop and laptop computers, cellular phones, electronic gaming devices, personal digital assistants, graphing calculators, and satellite, shortwave, CB, and GPS radios. (FAC 9.) Plaintiff contends that this regulation is overbroad and vague as it punished the patients for the actions of the staff. (FAC 9.) Section 4350 does not define or distinguish between devices that have no internet capability such as a common radio. (FAC 9.) The regulation was placed into effect due to the supposed violations of hospital regulations, but it was DSH employees who were violating the law by introducing the contraband material into the hospital for patients who were willing to pay for it. (FAC 9.) Plaintiff

has not violated any hospital policies or state or federal laws concerning the ownership of his electronic devices. (FAC 10.)

Inmates at the prison and other penal institutions are allowed to have the electronic devices that DSH is preventing Plaintiff from possessing. (FAC 10.) The California Department of Corrections and Rehabilitation ("CDCR") is currently allowing the advancement of technology within the prison industry by purchasing 500 tablets to be used by inmates at the California Men's Colony as a tool for educational and vocational training. (FAC 10.) These wireless devices allow inmates to communicate work assignments and tests via wireless communication to the prison instructor without the need of a classroom. (FAC 10.) For entertainment purposes, the CDCR allows X-Boxes and PlayStations as long as the wireless devices are inoperable and disconnected. (FAC 10.) State prisoners are allowed to purchase and own computer tablets, PlayStations, and X-Boxes without security concerns as long as the internet devices are disconnected. (FAC 10.) Plaintiff contends that he is being subjected to punitive conditions by not being allowed to own the same items. (FAC 10.)

Plaintiff contends that Defendants are using the introduction of child pornography into the facility as an excuse to deny him ownership of his property. (FAC 11.) Plaintiff has verifiable proof that it is state employees who introduced the contraband into the facility and not state employees. (FAC 11.) Since CSH opened in 2005, there have only been 29 patients caught and charged with possession of child pornography out of a population of 2,387. (FAC 11.) Only 17 of these individuals were convicted. (FAC 11.) Since this is only .007 percent of the population it is not the epidemic that Defendants are claiming. (FAC 11.) Also, five employees have been caught possessing child pornography and only one was convicted. (FAC 11.) Patients need to be protected from the employees who are introducing the child porn into the facility and Defendants are claiming a false security concern. (FAC 11.)

Plaintiff has the right to freedom of expression and free speech. (FAC 11.) Plaintiff has the right to own and possess his games and other personal property. (FAC 11.)

On December 27, 2017, Plaintiff received a copy of the proposed regulation that Pam Ahlin is implementing to now include electronic devices other than Wi-Fi. (FAC 12.) On January 13,

2018, the facility was locked down and searched and Plaintiff's property was removed from his possession. (FAC 12.) This included pens, pencils, books, photos, DVD players, factory DVD movies, all electronic devices including X-Plod radios, cassette players, cassette tapes, Wiki-Readers, book readers, calculators, shavers, and food. (FAC 12.) Although the scope of 4350 was limited to only electronic devices, all of Plaintiff's property was confiscated. (FAC 12.) As of April 11, 2018, Plaintiff had not received any of his confiscated property back. (FAC 12.) On January 29, 2018, defendants used section 4350 to confiscate all of Plaintiff's personal property including pens, pencils, watches, pictures, cables, etc. (FAC 16.)

Brandon Price is responsible for enforcing this new regulation. (FAC 13.) This amended regulation has removed from Plaintiff the ability to own all media devices which have the capability to store data: including Plaintiff's MP3 player which stores music for entertainment; flash drives used to store material for copying at the hospital copy center of legal materials, letters, and briefs; hard drives used to store legal data, music, and television series, and storage of current court decisions and opinions. (FAC 13.) Since 2014, patients have been allowed to scan their legal work to digital copies and stored these copies on personal hard drives to remove excess storage of paperwork which was considered a fire hazard. (FAC 13.) Plaintiff destroyed most of his legal work in paper form and only has the information stored on his flash drives. (FAC 13.) Plaintiff's documents were scanned electronically in JPG format, and Defendants are refusing to make available JPG formats in the computer lab. (FAC 13.) Defendants are also refusing to make available other formats in which Plaintiff's legal documents were stored. (FAC 13.) Plaintiff contends that if there was a computer malfunction or flash drive failure, per the agreement that Plaintiff was forced to sign he would be responsible for the cost of the state issued flash drive and loss of his legal work would cause a constitutional injury from which Plaintiff would never recover. (FAC 14.)

Defendants state that they have a right to access and view Plaintiff's flash drive at any time for compliance with safety and security of the institution. (FAC 14.) Plaintiff contends that this not only violates HIPPA, but the confidentiality of Plaintiff's legal actions against the State of California and its employees. (FAC 14.) Plaintiff has helped other patients with their legal work

and has been informed that if any other person's legal work is contained on his flash drive that would be grounds to deny Plaintiff the use of his flash drives and the computer lab. (FAC 14.)

Plaintiff has no third party to whom he can mail his property. (FAC 14.) Plaintiff has an Mp3 player with approximately 200,000 songs for personal listening; DVD players, Micca Media players, memory devices, CDs and hard drives with over 200,000 Mp3s. (FAC 14.)

Per the September 20, 2017 memo distributed by Defendant Price, "Modern technology has made it difficult to determine the difference between true CD-R, CF-RW, DVD-R, and DVD-RW items." (FAC 14.) Once the digital media is removed from its packaging, staff is unable to validate its contents. (FAC 14.) Allowing this material to be mailed from the facility poses an unreasonable safety and security risk to the public, the facility, staff, and patients. (FAC 14-15.) Staff would have to view the contents of the items in their entirety which would be very time consuming and poses an unreasonable burden on the already limited staffing resources. (FAC 15.) Due to this, Plaintiff's personal property will be destroyed without compensation to Plaintiff. (FAC 15.) Plaintiff alleges that this causes a substantive due process violation and constitutional injury as he has nowhere to mail his property. (FAC 15.) Plaintiff contends that he has a right to make copies of media pursuant to 17 U.S.C. § 1008 but his copied music will be destroyed as contraband copyright violations. (FAC 15.)

Plaintiff has invested over $10,000 on DVDs and television series, Palm Pilot, computer, readers/writers, and other electronic equipment. (FAC 15.) Plaintiff has collected many series and more DVDs for his personal use and viewing. (FAC 15.) Plaintiff has been advised that pursuant to this new regulation he will only be allowed a combination of 30 music CDs and DVDs. (FAC 15.) Plaintiff contends this is punitive because CDs and DVDs do not constitute a security threat to the institution. (FAC 15.) Patients have previously been allowed to purchase blank DVD and readers/writers with the knowledge that they would be used to copy movies and music. (FAC 15.) Sony, MGM, and Blu-Ray give permission to download movies on your personal media players to view, as well as streaming for series produced by Netflix, Disney, etc. (FAC 15.) Plaintiff contends that taking copies of movies from patients who do not have money to buy the original movies amounts to cruel and unusual punishment. (FAC 15.) Plaintiff states that he

bought his movies and series as originals and he should not have to mail them home as contraband when he was previously allowed to possess them without restriction just to satisfy a false security concern. (FAC 15.)

Finally, Plaintiff contends that the child pornography which the defendants are using to justify removing the memory storage devices was introduced into the hospital by staff. (FAC 16.) The state court records reflect that in the last one to two years, two state employees, Kory G. Cooper and Carla K. Magdaleno, were apprehended bringing child pornography and other contraband into the institution. (FAC 16.) Cell phones, pornography, wireless devices, alcohol, drugs, and tobacco continue to be introduced into the facility by staff for patients willing to pay for the contraband. (FAC 16.) Most recently on April 2, 2018, staff was walked out for smuggling tobacco into the facility. (FAC 16.) Defendants have allowed patients to purchase property, and in some cases once staff introduce contraband, patients start misusing approved items. (FAC 16-17.) By issuing a blanket prohibition declaring the once legal items contraband, Defendants are punishing the guilty with the innocent. (FAC 17.)

Now all the money Plaintiff has spent purchasing the items at one and a half times their actual cost will be lost. (FAC 17.) Plaintiff does not have the money to buy these devices and then have them taken aware four to five years later. (FAC 17.) Plaintiff works as a janitor making $52.50 per month and it takes him more than six months to save the money to purchase an X-Box or tablet because he has no family members or friends able to buy them for him. (FAC 17.)

Plaintiff contends that taking away the items will make the institution more dangerous because the detainees will have no way to entertain themselves and it will open the door to violence. (FAC 17.) Plaintiff argues that the least restrictive way to address the security concerns would be to stop allowing blank CDs and DVDs as well as DVD burners. (FAC 17.) Plaintiff alleges that Defendants are taking away items that cannot copy information and do not pose a safety and security threat to the facility. (FAC 17-18.) If the defendants start to police their own employees (for example, Kory G. Cooper (child porn, etc.) and Carla K. Magdaleno (tobacco, cell phones, etc.)) the criminal acts of the staff members and patients will cease. (FAC 18.)

Plaintiff contends that section 4350 is punitive because it places Plaintiff in the same

category as prisoners. (FAC 18.) Pursuant to Title 9, civil detainees are not allowed internet access or computers while patient in other facilities are allowed computers. FAC 18-19.)

Plaintiff contends that other civil detainees are allowed internet access as well as access to computers. (FAC 18-19.) Pursuant to section 880-884, the defendants should have to revisit the issue every 30 days. (FAC 19.) Plaintiff contends that as long as employees smuggle micro memory chips, flash drives, telephones, etc. into the facility there will always be a problem at CSH. (FAC 19.) Plaintiff alleges that the regulation violates his rights under the First, Fourth, and Fourteenth Amendments. (FAC 19.) The CDCR allows prisoners to possess electronic items that are Wi-Fi capable for their personal use and enjoyment. (FAC 20.)

Plaintiff seeks a declaration of his rights and injunctive relief. (FAC 21-22.)

**III.**

**DISCUSSION**

**A.    Section 4350**

To determine whether conditions of confinement of civilly committed individuals have been violated, courts look to the substantive due process clause of the Fourteenth Amendment. Youngberg v. Romeo, 457 U.S. 307, 321-22 (1982); Jones v. Blanas, 393 F.3d 918, 931-32 (9th Cir. 2004). States are thus required "to provide civilly-committed persons with access to mental health treatment that gives them a realistic opportunity to be cured and released," and to provide "more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." Sharp v. Weston, 233 F.3d 1166, 1172 (9th Cir. 2000) (citations omitted).

Although civilly detained persons must be afforded more considerate treatment and conditions of confinement than criminals, where specific standards are lacking, courts may look to decisions defining the constitutional rights of prisoners to establish a floor for the constitutional rights of persons detained under a civil commitment scheme, Padilla v. Yoo, 678 F.3d 748, 759 (9th Cir. 2012) (citing Hydrick v. Hunter, 500 F.3d 978, 989 (9th Cir. 2007), vacated and remanded on other grounds by 556 U.S. 1256 (2009), and may borrow Eighth Amendment standards to do so, Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998); Redman v. County of San Diego, 942 F.2d 1435, 1441

(9th Cir. 1991), abrogated on other grounds by 511 U.S. 825 (1994).  But the conditions under which civil detainees are held cannot be more harsh than those under which prisoners are detained except where the statute itself creates a relevant difference.  Hydrick, 500 F.3d at 989 n.7.

The Due Process Clause requires that the nature and duration of the civil commitment must bear some reasonable relation to the purpose for which the individual is committed.  Jones, 393 F.3d at 931.  However, civilly detained individuals can be subject to restrictions that have a legitimate, non-punitive government purpose and that do not appear to be excessive in relation to that purpose. Bell v. Wolfish, 441 U.S. 520, 535 (1979).  "A reasonable relationship between the governmental interest and the challenged restriction does not require an exact fit, nor does it require showing a 'least restrictive alternative.' "  Valdez v. Rosenbalm, 302 F.3d 1039, 1046 (9th Cir. 2002) (citations omitted).  The only question is whether the defendants might reasonably have thought that the policy would advance its interests.  Id.

     1.    Punitive Nature of Section 4350

Under Ninth Circuit precedent, "a restriction is 'punitive' where it is intended to punish, or where it is 'excessive in relation to [its non-punitive] purpose,' ' or is 'employed to achieve objectives that could be accomplished in so many alternative and less harsh methods[.]" Jones, 393 F.3d at 934 (citations omitted).  "[A] presumption of punitive conditions arises where the individual is detained under conditions identical to, similar to, or more restrictive than those under which pretrial criminal detainees are held, or where the individual is detained under conditions more restrictive than those he or she would face upon commitment." Id.  This presumption can be rebutted by the defendants explaining a legitimate, non-punitive purpose for the conditions imposed.  Id.

Plaintiff alleges that due to section 4350 and the newly added revisions he is being detained under conditions that are more restrictive than the conditions of prisoners in the custody of the CDCR.  Defendants may be able to provide reasonable justification for the ban on the relevant devices, but at the pleading stage, Plaintiff's allegations are sufficient to state a cognizable conditions of confinement claim against Defendants Ahlin and Price based section 4350's prohibition of electronic devices and items.

/ / /

### 2. Challenge to the regulation as over broad

Plaintiff contends that the regulation is over broad because it does not distinguish between electronic items that are internet capable, and devices that have no internet capability like a common radio. Plaintiff contends that section 4350 allows Defendants to seize any electronic device as internet capable. Since the purpose of section 4350 and the amendments are alleged to be to control the introduction of child pornography and contraband into the facility, it is unclear how prohibiting devices that have no ability to connect to the internet or storage capacity would further this goal. Liberally construed, Plaintiff's allegation that the regulation prohibits devices that are incapable of connecting to the internet and have no storage capacity states a cognizable claim.

Plaintiff also alleges that his rights are violated based upon the restriction for devices on which he stores his legal documents and the previous order found that this claim could proceed, however, this Court respectfully disagrees. Plaintiff alleges that he has been allowed to scan his legal work to digital copies and stored these copies on hard drives to remove excess storage of paperwork which was considered a fire hazard. (FAC 9.) However, these hard drives allow for copying of digital material which would include the illegal child pornography which has been introduced into the facility and that the regulation has been enacted to address. Although Plaintiff contends that he will no longer be allowed to keep digital copies of his legal material, there are no allegations that patients are restricted from maintaining paper copies of their legal files and documents. While electronic copies may be more convenient to maintain, due process does not require the institution to provide the most convenient manner in which to access legal files. Plaintiff has failed to state a claim that prohibiting devices that provide for memory storage is over broad or excessive in relation to a non-punitive purpose.

### 4. Limitation on Property

Plaintiff alleges that limiting him to only 30 CDs or DVDs violates his constitutional rights. Section 4350 also provides that patients may possess or have personal access to:

> (1) One (1) television or computer monitor; one (1) DVD, Blu-ray, or similar player; one (1) CD player; and one (1) radio or music player. These items shall not have internet, external communication, or wireless communication capability.
>
> (2) No more than thirty (30) commercially manufactured and unmodified CDs, DVDs,

and Blu-Rays received in factory-original packaging in a patient's room or unit storage. Patient may store additional manufactured and unmodified CDs, DVDs, and Blu-Rays in off-unit storage.

(3) Tablets or other devices designed for confined individuals through authorized vendors of the Department of State Hospitals and California Department of Corrections and Rehabilitation.

Cal. Code Regs. tit. 9, § 4350(b).

Simply because inmates retain certain rights does not mean that their rights are not subject to restrictions and limitations. Wolfish, 441 U.S. at 545. Lawful incarceration brings with it the withdrawal or limitation of many privileges and rights that are justified by considerations of the penal system. Id. at 546. "There must be a "mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." Id. (quoting Wolff v. McDonnell, 418 U.S. 539, 566 (1974)). This principle applies equally to pretrial detainees and pretrial detainees do not possess the full range of freedoms as an unincarcerated individual. Wolfish, 441 U.S. at 546. "[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." Id.

Here, while Plaintiff may only have 30 CDs or DVDs in his room, the regulation provides that he may store additional manufactured and unmodified CDs or DVDs in off-unit storage. Accordingly, the Court finds that Plaintiff fails to state a cognizable claim that allowing only 30 items in a patient's room violates his constitutional rights.

5. Procedural Due Process

It is unclear if Plaintiff is attempting to allege a procedural due process claim. The Due Process Clause of the Fourteenth Amendment of the United States Constitution protects Plaintiff from being deprived of property without due process of law, Wolff, 418 U.S. at 563, and Plaintiff has a protected interest in his personal property, Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974). Authorized, intentional deprivations of property are actionable under the Due Process Clause. See Hudson v. Palmer, 468 U.S. 517, 532, n.13 (1984); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985). However, the Due Process Clause is not violated by the random, unauthorized deprivation

of property so long as the state provides an adequate post-deprivation remedy.  Hudson, 468 U.S. at

533; Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994).

To have a property interest, Plaintiff must demonstrate "more than an abstract need or desire for it. . . .  He must, instead, have a legitimate claim of entitlement to it" under state or federal law. Board of Regents v. Roth, 408 U.S. 564, 577 (1972).  As previously found in the prior screening order, the question is whether an individual awaiting civil commitment has a property right to items in his possession that were once, but no longer, authorized, where Plaintiff is allowed to transfer those items to a third party of his choosing outside the institution.  (ECF No. 7 at 21.)

Although the Ninth Circuit has not yet reached this issue, other courts have found that "while an inmate's ownership of property is a protected property interest that may not be infringed upon without due process, there is a difference between the right to own property and the right to possess property while in prison." Searcy v. Simmons, 299 F.3d 1220, 1229 (10th Cir. 2002) (quoting Hatten v. White, 275 F.3d 1208, 1210 (10th Cir. 2002)).  Thus, courts have found that when property policies are revised to prohibit items but inmates and detainees are allowed to store the items outside of the institution, no property interest is implicated and no process is due. See e.g., Graham v. Sharp, No. 10-5563 (SRC), 2011 WL 2491374, at *15-16 (D.N.J. June 20, 2011) (finding no constitutionally-recognized property interest for civil detainees in the continued ownership of previously authorized electronic devices in the face of newly implemented regulations that would prohibit and confiscate these devices); Davis v. Powers, No. C08-5751 FDB/KLS, 2010 WL 2163134, at *10-11 (W.D. Wash. Apr. 16, 2010) (finding no property interest when a television had to be returned because it was in conflict with regulations); Trenton v. Schriro, No. CIV 06-2905-PHX-MHM (DKD), 2007 WL 2572345, at 1-2 (D. Ariz. Sept. 74, 2007) (no property right for previously allowed typewriter where plaintiff had the option to mail it home rather than have it confiscated); Dunbar v. A.D.O.C., No. CV 08-420-PHX-SMM (MEA), 2008 WL 2038026, at *4 (D. Ariz. May 12, 2008) (finding no property right deprivation for confiscation of a television pursuant to prison regulations); see also Knight v. Yarborough, No. CV 03-01210-AG (VBK), 2011 WL 4550190, at *18 (C.D. Cal. Aug. 22, 2011) (noting that "[i]nmates do not have a constitutional right to keep, or to dispose of contraband materials as they wish.").

Section 4350 provides that if an inmate consents to search of the property that was in their possession at the time that the regulation was implemented such property will be mailed to a location designated by the patient if no contraband is found following the search. Cal. Code Regs. tit. 9, § 4350(e). This Court agrees that since Plaintiff can mail his property to a location of his choice as long as it does not contain any illegal material, he will retain ownership of the items. As Plaintiff retains ownership of the items that are free of illicit materials, no deprivation will have occurred and no protected property rights will be implicated; therefore, there is no process due.[2] See Valdez, 302 F.3d at 1045 (where there is no state created property interest the procedural due process claim fails).

Further, any procedural due process requirements appear to have been met in this case. "Where the action complained of is legislative in nature, due process is satisfied when the legislative body performs its responsibilities in the normal manner prescribed by law." Halverson v. Skagit Cty., 42 F.3d 1257, 1260 (9th Cir. 1994), as amended on denial of reh'g (Feb. 9, 1995). The regulation does not target Plaintiff or his property, but applies to all individuals that are detained in the DSH. '[G]overnmental decisions which affect large areas and are not directed at one or a few individuals do not give rise to the constitutional procedural due process requirements of individual notice and hearing; general notice as provided by law is sufficient." Halverson, 42 F.3d at 1261 (9th Cir. 1994).

As attached to Plaintiff's original complaint, the CDCR provided notice and an opportunity to comment on December 22, 2017. (Finding of Emergency and Emergency Regulation Text, attached to complaint at pp. 23-36, ECF No. 1.) Plaintiff fails to state a cognizable procedural due process claim based on the amendment to section 4350.[3]

---

[2] Although Plaintiff alleges that he has no third party to which his property can be sent, there are other options available to Plaintiff. For example, many individuals use storage facilities to store excess items. While Plaintiff may not wish to pay the storage costs associated with storing his items due to the indefiniteness of his confinement, he is provided with the option to mail the items to a third party. Plaintiff's decision not to mail the items or identify a third party does not create a due process claim.

[3] Plaintiff argues that 17 U.S.C § 1008 of the Audio Home Recording Act allows pretrial detainees to possess copies of copyrighted items. Section 1008 provides that "No action may be brought under this title alleging infringement of copyright based on the manufacture, importation, or distribution of a digital audio recording device, a digital audio recording medium, an analog recording device, or an analog recording medium, or based on the noncommercial use by a consumer of such device or medium for making digital musical recordings or analog musical recordings." 17 U.S.C. § 1008. However, section 1008 "does not apply, so as to preclude a copyright infringement action, to the downloading of digital audio files to computer hard drives since computers and their hard drives are not 'digital audio

**B. Confiscation of Property**

1. Fourth Amendment

Plaintiff alleges that section 4350 violates his rights under the Fourth Amendment. The Fourth Amendment provides that 'the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. U.S. Const. amend. IV. The Fourth Amendment prohibition against unreasonable search and seizure extends to incarcerated prisoners and civil detainees. Thompson v. Souza, 111 F.3d 694, 699 (9th Cir. 1997) (prisoners); Hydrick, 500 F.3d at 993 (civil detainees). However, "the reasonableness of a particular search is determined by reference to the prison context." Hydrick, 500 F.3d at 993 (quoting Michenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir.1988)). Confinement in a state institution raises concerns similar to those raised by housing pretrial detainees, such as "the safety and security of guards and others in the facility, order within the facility and the efficiency of the facility's operations." Hydrick, 550 F.3d at 993 (quoting Andrews v. Neer, 253 F.3d 1052, 1061 (8th Cir. 2001)).

For the Fourth Amendment to apply, there must be a reasonable expectation of privacy in the place that is invaded. Espinosa v. City & Cty. of San Francisco, 598 F.3d 528, 533 (9th Cir. 2010). "The contours of an involuntarily confined civil detainee's right to privacy in his room in a secure treatment facility are unclear, but assuming Plaintiff retains any reasonable expectation of privacy at all in his living area at CSH, it would necessarily be of a diminished scope given Plaintiff's civil confinement." Warrior v. Santiago, No. 116CV01504AWIGSAPC, 2018 WL 827616, at *4 (E.D.

---

recording devices.' " 18 Am. Jur. 2d Copyright and Literary Property § 186; see also A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1025 (9th Cir. 2001), as amended (Apr. 3, 2001), aff'd sub nom. In re Napster, Inc.; Jerry Leiber, d/b/a Jerry Leiber Music, Mike Stoller, d/b/a Mike Stoller Music, Frank Music Corp. v. Napster; In re Napster; Jerry Leiber, d/b/a Jerry Leiber Music, Mike Stoller, d/b/a Mike Stoller Music, Frank Music Corp., 284 F.3d 1091 (9th Cir. 2002), and aff'd sub nom. In re Napster, Inc.; Jerry Leiber, d/b/a Jerry Leiber Music, Mike Stoller, d/b/a Mike Stoller Music, Frank Music Corp. v. Napster; In re Napster; Jerry Leiber, d/b/a Jerry Leiber Music, Mike Stoller, d/b/a Mike Stoller Music, Frank Music Corp., 284 F.3d 1091 (9th Cir. 2002) ("the Audio Home Recording Act does not cover the downloading of MP3 files to computer hard drives).

Further, to the extent that Plaintiff is challenging the restrictions on possession of certain property by the regulation, the issue is not whether Plaintiff can legally possess the items, but whether the regulation prohibiting the items has "a legitimate, non-punitive government purpose" and does "not appear to be excessive in relation to that purpose." Wolfish, 441 U.S. at 535. To the extent that Plaintiff alleges that the security concerns are false, his complaint demonstrates that civil detainees continue to be found in possession of illegal items and the manner in which they are introduced into the institution does not make the security concerns false.

Cal. Feb. 12, 2018) (collecting cases). Although Plaintiff is not a convicted criminal, "he is involuntarily serving a civil commitment term at a secure facility; and he is not a free individual with a full panoply of rights." Ryan v. Siqueiros, No. 1:15-CV-01152 DLB PC, 2016 WL 2898450, at *2 (E.D. Cal. May 18, 2016). Although civil detainees are entitled to more considerate treatment and conditions of confinement than prisoners, Youngberg, 457 U.S. at 322, maintaining facility security and effectively managing the institution are unquestionably legitimate, non-punitive government interests, Jones, 393 F.3d at 932.

Here, Plaintiff alleges that his property was confiscated because it was deemed to be contraband pursuant to section 4350 and alleges that Defendants contend that his flash drive can be searched at any time for contraband. Based on the rather vague allegations in Plaintiff's amended complaint, it appears that he can receive a state issued thumb drive on which to transfer and store his legal documents if he signs an agreement allowing officials to randomly search the drive for illegal material. (FAC 13-14.)

To the extent that Plaintiff is attempting to allege a Fourth Amendment violation due to his property being searched to ensure that it is free of illegal material, Plaintiff fails to state a cognizable claim. While Plaintiff alleges that any security and safety concerns are false, Defendants have an interest in determining if illegal material is present on the devices prior to releasing them to a third party of Plaintiff's choosing. Also, prison officials are not required to obtain a warrant prior to searching for illegal material in the possession of inmates. Ferguson v. Cardwell, 392 F.Supp. 750, 752 (D. Ariz. 1975) ("since a prison employee is subject to search without a warrant or probable cause, it necessarily follows that the inmates are likewise subject to searches without a warrant or probable cause"). Finally, by consenting to having his files searched in order to possess a thumb drive, Plaintiff has waived any his right to any privacy in the files.[4] Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973) (a search conducted pursuant to a valid consent is wholly valid). Given the context of the allegations here, Plaintiff cannot state a cognizable claim under the Fourth Amendment for seizure or search of his property.

---

[4] Further, there is no private right of action under the Health Insurance Portability and Accountability Act, Webb v. Smart Document Sols., LLC, 499 F.3d 1078, 1081 (9th Cir. 2007), and to the extent that any constitutional right to privacy in medical records exists it is outside the SVPA, Seaton v. Mayberg, 610 F.3d 530, 539 (9th Cir. 2010).

1          2.      Fourteenth Amendment

2          Plaintiff alleges that on January 13, 2018, and January 29, 2018, all of his personal property

3   was confiscated, including a wide variety of items not precluded by section 4350 such as pens,

4   pencils, books, photos, DVD players, DVD movies, radios, cassette players, book readers,

5   calculators, shavers, watches, pictures, and cables.  (FAC 12, 16.)

6          As discussed above, the Due Process Clause of the Fourteenth Amendment of the United

7   States Constitution protects Plaintiff from being deprived of property without due process of law,

8   Wolff, 418 U.S. at 5563, and Plaintiff has a protected interest in his personal property, Hansen, 502

9   F.2d at 730.  Authorized, intentional deprivations of property are actionable under the Due Process

10  Clause.  See Hudson, 468 U.S. at 532, n.13; Quick, 754 F.2d at 1524.  However, the Due Process

11  Clause is not violated by the random, unauthorized deprivation of property so long as the state

12  provides an adequate post-deprivation remedy.  Hudson, 468 U.S. at 533; Barnett, 31 F.3d at 816-

13  17.

14         Initially, to the extent that Plaintiff's property was physically confiscated, there are no

15  allegations that Defendants Ahlin or Price personal participated in the confiscation of his property.

16  Accordingly, all liability as to these defendants would be based on the implementation of section

17  4350.  Plaintiff's allegation that his electronic items were confiscated pursuant to section 4350 is

18  sufficient to state a claim.

19         However, Plaintiff's allegation that unidentified officers used section 4350 to confiscate items

20  beyond those allowed by section 4350 fails to state a cognizable claim.  First, as discussed above,

21  there is no allegation that Defendants Ahlin or Price were involved in the confiscation of the

22  property.  Secondly, the confiscation of such property would not be authorized by section 4350 and

23  would therefore be a random, unauthorized deprivation of property for which the state provides an

24  adequate post-deprivation remedy.  Hudson, 468 U.S. at 533 (1984); Barnett, 31 F.3d at 816-17

25  (California provides an adequate post deprivation remedy for property deprivations).

26         Plaintiff has failed to state a claim for the deprivation of property other than those items

27  prohibited by section 4350.

28  / / /

**C.    First Amendment**

Plaintiff alleges that confiscating his electronic devices and items and denying him access to the internet violates his right to freedom of speech and freedom of expression under the First Amendment.  Plaintiff also alleges that Defendants have interfered with his ability to access the Court by confiscating his hard drives, thumb drives, and by failing to make available in the law library the formats in which Plaintiff's documents are stored and failing to provide a daily back up of Plaintiff's legal work.

Section 4350 states:

> Electronic devices with the capability to connect to a wired (for example, Ethernet, Plain Old Telephone Service (POTS), Fiber Optic) and/or a wireless (for example, Bluetooth, Cellular, Wi-Fi [802.11a/b/g/n], WiMAX) communications network to send and/or receive information are prohibited, including devices without native capabilities that can be modified for network communication.  The modification may or may not be supported by the product vendor and may be a hardware and/or software configuration change.  Some examples of the prohibited devices include desktop computers, laptop computers, cellular phones, electronic gaming devices, personal digital assistant (PDA), graphing calculators, and radios (satellite, shortwave, CB and GPS).

Cal. Code Regs. tit. 9, § 4350.  Section 4350 prohibits Plaintiff from possessing certain devices that connect to the internet, but it does not prohibit Plaintiff from accessing the internet.

Section 891 provides that "[n]on LPS patients shall not have access to the internet."  Cal. Code Regs. tit. 9, § 891.  "Non-LPS" means that the placement in or commitment to the facility is pursuant to legal authority other than the Lanterman-Petris-Short (LPS) Act, commencing with Section 5000, of Part 1, Division 5 of the Welfare and Institutions Code)."  Cal. Code Regs. tit. 9, § 881(o).  The LPS Act governs involuntary treatment of the mentally ill in California.  In re Conservatorship & Estate of George H., 169 Cal.App.4th 157, 159 (2008).  In contrast, the SVPA targets "a small but extremely dangerous group of sexually violent predators that have diagnosable mental disorders [who] can be identified while they are incarcerated."  Cooley v. Superior Court, 29 Cal. 4th 228, 253 (2002), as modified (Jan. 15, 2003).

Further, section 4350 itself provides that while Plaintiff shall not be in personal possession of the electronic devices, the facility has the discretion to make such devices accessible to the patient on a supervised basis.  Cal. Code Regs. tit. 9, § 4350(d).  Based on the allegations in the complaint,

there is a computer lab available for the use of civil detainees. (FAC 13-14.)

An inmate does not retain rights inconsistent with proper incarceration. Overton v. Bazzetta, 539 U.S. 126, 131 (2003). This includes those First Amendment rights that are inconsistent with status as a prisoner or with the legitimate penological objectives of the corrections system. Jones v. N. Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 129 (U.S. 1977). For example, the Supreme Court has held that freedom of association is among those rights least compatible with incarceration and some curtailment of the freedom must be expected. Overton, 539 U.S. at 132; see also Pell v. Procunier, 417 U.S. 817, 826 (1974) (limitations on press interviews); Thornburgh v. Abbott, 490 U.S. 401, 405 (1989) (regulation allowing rejection of incoming mail that was determined be detrimental to security, good order or discipline of the institution or if it might facilitate criminal activity); Block v. Rutherford, 468 U.S. 576, 591 (1984) (denial of contact visits).

Further, courts have routinely held that denying a SVP the right to access the internet does not violate the First Amendment. See Telucci v. Withrow, No. 116CV00025JLTPC, 2016 WL 2930629, at *5-6 (E.D. Cal. May 19, 2016); Consiglio v. King, No. 115CV00969BAMPC, 2016 WL 4000001, at *3-4 (E.D. Cal. July 25, 2016); Cerniglia v. Price, No. 117CV00753AWIJLTPC, 2017 WL 4865452, at *4 (E.D. Cal. Oct. 27, 2017); Carmony v. Cty. of Sacramento, No. CIV S-05-1679LKKGGHP, 2008 WL 435343, at *18 (E.D. Cal. Feb. 14, 2008), report and recommendation adopted, No. CIVS051679LKKGGHP, 2008 WL 795101 (E.D. Cal. Mar. 25, 2008), order vacated on denial of reconsideration (Apr. 9, 2008), and report and recommendation adopted, No. CIVS051679LKKGGHP, 2008 WL 2477646 (E.D. Cal. June 17, 2008). Plaintiff's complaint on its face demonstrates that the regulations restricting access to the internet have been put in place to address issues with child pornography at DSH and that this continues to be a problem at CSH. (FAC 9, 11, 16-17, 18.)

Plaintiff alleges that his rights under the First Amendment to protected speech is being violated by denying him possession of devices that allow his protected speech to be expressed. "The law generally requires a careful balancing of the rights of individuals who are detained for treatment, not punishment, against the state's interests in institutional security and the safety of those housed at the facility." Hydrick, 500 F.3d at 994. "In weighing those interests, it cannot be ignored that . .

. SVPs have been civilly committed subsequent to criminal convictions and have been adjudged to pose a danger to the health and safety of others." Id. "Therefore, the rights of SVPs may not necessarily be coextensive with those of all other civilly detained persons." Id.

Four factors are relevant in deciding whether a regulation affecting a constitutional right that survives detainment withstands constitutional challenge: (1) whether the regulation has a valid, rational connection to a legitimate governmental interest; (2) whether alternative means are open to inmates to exercise the asserted right; (3) what impact an accommodation of the right would have on guards and detainees and facility resources; and (4) whether there are ready alternatives to the regulation. Overton, 539 U.S. at 131-132 (internal quotation marks omitted) (citing Turner v. Safley, 482 U.S. 78, 89-91(1987)).

While Plaintiff alleges that he is being denied the right to express his protected speech, an electronic device, such as a computer, is just one means for Plaintiff to accomplish this. Plaintiff has other means to gather information and to express himself such as the television, mail, or telephone. Plaintiff's first amended complaint does not allege that his lawful communication or speech is not allowed by other means.

Further, the regulations prohibition regarding devices that have memory storage cannot be said to be excessive in relation to the regulations purpose. The devices which Plaintiff alleges are prohibited, such as hard drives and thumb drives are specifically the types of devices that would allow for the transfer and storage of the illegal material that is the purpose of the prohibition. Therefore, the Court finds that Plaintiff has failed to state a claim under the First or Fourteenth Amendment based on denial of access to the internet or electronic devices.

3. Access to Courts

To the extent that Plaintiff alleges that his access to the Court has been impeded, he fails to state a cognizable claim. The Constitution guarantees detained people, including civil detainees, meaningful access to the courts. Bounds v. Smith, 430 U.S. 817, 822 (1977) (prisoners); Hydrick, 500 F.3d at 990 (civil detainees); Cornett v. Donovan, 51 F.3d 894, 898 (9th Cir. 1995) ("right of access [to the courts] is guaranteed to people institutionalized in a state mental hospital.) Detainees and prisoners have the right to pursue claims that have a reasonable basis in law or fact without

active interference by prison officials.  See Silva v. Di Vittorio, 658 F.3d 1090, 1103-04 (9th Cir. 2011) (finding that repeatedly transferring the plaintiff to different prisons and seizing and withholding all his legal files constituted active interference) overruled on other grounds by Coleman v. Tollefson, 135 S.Ct. 1759 (2015); see also Jones, 393 F.3d at 936 (applying this standard to a detainee awaiting civil commitment proceedings).  This forbids state actors from erecting barriers that impede the right of access to the courts of incarcerated persons.  Silva, 658 F.3d at 1102 (internal quotations omitted).  However, to state a colorable claim for denial of access to the courts, Plaintiff must allege that he suffered an actual injury in the pursuit of the litigation of direct criminal appeals, habeas petitions, and civil rights actions.  Lewis v. Casey, 518 U.S. 343, 351 (1996).  "Actual injury" means a "specific instance in which an inmate was actually denied access to the courts."  Sands v. Lewis, 886 F.2d 1166, 1171 (9th Cir. 1989) overruled on other grounds by Lewis, 518 U.S. at 350.

The right of access, furthermore, does not guarantee any "particular methodology but rather the conferral of a capability — the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts."  Phillips v. Hust, 588 F.3d 652, 655 (9th Cir. 2009) (quoting Lewis, 518 U.S. at 356).  Similarly, a prisoner claiming that his right of access to the courts has been violated due to inadequate library access must show that (1) access was so limited as to be unreasonable; and (2) the inadequate access caused actual injury.  Vandelft v. Moses, 31 F.3d 794, 797 (9th Cir. 1994).

Plaintiff alleges that Defendants have refused to copy his legal files onto thumb drives, to provide access to specific types of files, or to provide daily back up for Plaintiff's legal work.  (FAC 9.)  Plaintiff has failed to allege that he has been denied access to pursue his legal claims or that he has suffered actual injury.  Plaintiff complains that his legal paperwork and research is saved on electronic devices and that his access to the court is impeded.  However, Plaintiff fails to allege that he is unable to maintain his legal work in paper format, or that he is precluded from access to the law library.  Further, Plaintiff has failed to allege facts sufficient to demonstrate actual injury.  Plaintiff fails to state a plausible access to the court claim.

### E.  Declaratory Relief

Plaintiff seeks an order declaring his constitutional rights.  "A case or controversy exists

justifying declaratory relief only when the challenged government activity is not contingent, has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning parties." Feldman v. Bomar, 518 F.3d 637, 642 (9th Cir. 2008) (quoting Headwaters, Inc. v. Bureau of Land Management, Medford Dist., 893 F.2d 1012, 1015 (9th Cir. 1989) (internal quotations and citation omitted)). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." U.S. v. State of Wash., 759 F.2d 1353, 1357 (9th Cir. 1985) (citations omitted).

In the event this action reaches trial and the jury returns a verdict in favor of Plaintiff, that verdict will be a finding that Plaintiff's constitutional rights were violated. Accordingly, a declaration that any defendant violated Plaintiff's rights is unnecessary in this action. The Court recommends that Plaintiff's request for declaratory relief be dismissed.

### G. Nature of Action against Defendants

Here, Plaintiff alleges that he is bringing claims against Defendants Ahlin and Price in their individual and official capacities. The court looks to the basis of the claims asserted and the nature of the relief sought to determine if the claims are asserted against the defendants in their individual or official capacity. Cent. Reserve Life of N. Am. Ins. Co. v. Struve, 852 F.2d 1158, 1161 (9th Cir. 1988).

Personal capacity suits seek to impose individual liability on the government official for actions taken under the color of state law. Hafer v. Melo, 502 U.S. 21, 25 (1991). To state an individual capacity claim, the plaintiff must show that the actions of the defendant caused the deprivation of a federal rights. Id.

An official capacity suit on the other hand is equivalent to a suit against the state itself alleging that the agency's policy or custom played a part in the violation of federal law. Hafer, 502 U.S. at 25. Further, "[t]he Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007).

The complaint filed here does not contain any allegations that the named defendants engaged in any individual wrongdoing. Plaintiff alleges that the named defendants are responsible for implementing a policy that prohibits him from possessing certain electronic devices. Plaintiff is attempting to hold the defendants liable for official policies and procedures that are implemented by the Department of State Hospitals. Additionally, Plaintiff does not seek monetary damages, but is seeking declaratory and injunctive relief. The allegations in the complaint state a claim against the defendants in their official capacities. Accordingly, the Court finds that this action should proceed against Defendants Ahlin and Price in their official capacities and the individual capacity claims should be dismissed.

## IV.

## CONCLUSION AND RECOMMENDATION

Plaintiff's complaint states a condition of confinement and deprivation of property claim against Defendants Ahlin and Price for implementing the amendments to section 4350 and a claim that the regulation is overly broad by prohibiting devices that are not capable of connecting to the internet and have no memory storage ability. However, Plaintiff has not sufficiently alleged facts to state any other cognizable claims. Plaintiff was previously notified of the applicable legal standards and the deficiencies in his pleading, and despite guidance from the Court, Plaintiff's first amended complaint is largely identical to the original complaint. Based upon the allegations in Plaintiff's original and first amended complaint, the Court is persuaded that Plaintiff is unable to allege any additional facts that would support the claims alleged in the first amended complaint, and further amendment would be futile. See Hartmann v. CDCR, 707 F.3d 1114, 1130 (9th Cir. 2013) ("A district court may not deny leave to amend when amendment would be futile.") Based on the nature of the deficiencies at issue, the Court finds that further leave to amend is not warranted. Lopez, 203 F.3d at 1130; Noll v. Carlson, 809 F.2d 1446-1449 (9th Cir. 1987).

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. This action proceed on Plaintiff's first amended complaint against Defendants Ahlin and Price in their official capacity for a condition of confinement and deprivation of property claim for implementing the amendments to section 4350 and a claim that the

regulation is overly broad by prohibiting devices that are not capable of connecting to the internet and have no memory storage ability;

2. The individual capacity claims be dismissed for failure to state a claim;

3. All other claims be dismissed for failure to state a claim; and

4. Plaintiff's request for declaratory relief be dismissed.

This findings and recommendations is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within thirty (30) days of service of this recommendation, Plaintiff may file written objections to this findings and recommendations with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **April 25, 2018**

UNITED STATES MAGISTRATE JUDGE